Dieffenbacher v. County of Mason.

---

## Philip L. Dieffenbacher v. County of Mason.

1. RULES AND REGULATIONS—*by whom reasonableness of, determined.* The question as to whether rules and regulations adopted by the county board, with respect to medical aid to be furnished to persons coming within section 24 of the Pauper Act, are reasonable, is to be determined by the court as a question of law.

2. MEDICAL AID—*when rule of county board providing for payment of, unreasonable.* A rule of a county board which fixes a fee of $1 per visit for medical aid furnished to persons coming within section 24 of the Pauper Act, is unreasonable where it is made to apply to all cases regardless of the nature of the ailments to be treated and the character of the services to be rendered.

3. MEDICAL AID—*what essential to recovery for, from county*. Where medical aid has been furnished by a physician to a person coming within section 24 of the Pauper Act, it is essential in order to recover from the county upon an implied assumpsit to show notice to the overseer of the poor of the necessity for the rendition of the services and a refusal or neglect by him to act.

Action of assumpsit. Appeal from the Circuit Court of Mason County; the Hon. THOMAS N. MEHAN, Judge, presiding. Heard in this court at the May term, 1904. Reversed and remanded. Opinion filed November 18, 1904.

LYMAN LACEY, SR., & SON, for appellant.

GUY R. WILLIAMS, State's Attorney, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit, by appellant against appellee, to recover for services rendered by him, as a physician, to certain patients in the city of Havana, who were afflicted with small-pox. A trial by jury resulted in a verdict and judgment for the defendant, from which the plaintiff appeals.

The facts involved, so far as we deem it necessary to recite them, are substantially as follows: During the year 1902, the disease known as small-pox became epidemic in the city of Havana, Mason county. The local board of health employed appellant to investigate and examine such cases as were brought to his attention, with the result that a number of different families were placed in quarantine upon his recommendation. He then continued to visit such families, and treated those of them who required it. He testifies that shortly thereafter he notified the overseer of the poor of the township of the fact that the cases existed, and that he was attending them. This, however, is denied by such overseer. No action in the matter was taken by the authorities, notwithstanding which appellant continued to treat the patients so long as it was necessary, and finally presented to the board of supervisors a claim for his services in the sum of $520.

The board refused to pay the same, after which appellant withdrew the claim and presented another covering the same services amounting to $1,280. This claim was also rejected by the board, whereupon appellant instituted this suit.

It is not controverted that the services were rendered, nor that the persons attended came within the provisions of section 24 of the statute entitled "Paupers" (Rev. Stat. 1903, page 1369), under which this suit is brought and which reads as follows:

"When any non-resident or any person not coming within the definition of a pauper, of any county or town, shall fall sick, not having money or property to pay his board, nursing and medical aid, the overseer of the poor of the town or precinct in which he may be, shall give or cause to be given him such assistance as they may deem necessary and proper, or cause him to be conveyed to his home subject to such rules and regulations as the county board may prescribe; and, if he shall die, cause him to be decently buried."

It is, however, contended that the overseer of the poor was not authorized to act in the premises except under the rule or regulation of the county board, with regard to such matters, which it is admitted was then in force and reads as follows: "Be it resolved by the board of supervisors of Mason county that on and after January 1, 1896, the price to be paid physicians for attending poor persons shall be one dollar per visit, and medicine, when made within the limits of any incorporated city or village."

Appellant insisted upon the trial, and still insists, that the rule is unreasonable, and therefore void and without force and effect. The trial court submitted the question to the jury as one of fact for their determination. This was error. The question was one for the court. Dillon Mun. Corp., sections 319, 329. Treating the question as such, we are of opinion that the rule is clearly unreasonable. It fixes the same fee for visits in all cases, whether the illness with which the patient is afflicted or suffering be slight or serious, infectious or non-infectious, or one requiring sur-

gical attention and assistance, or otherwise. Many cases might arise, so serious, dangerous or disagreeable in their nature, that no physician, of whatever skill or experience, would be willing to undertake them, because of the inadequacy of the compensation fixed. It is obvious that the result of restricting or limiting the authority of the overseer, as is done by the rule in question, would be frequently to render him powerless to afford proper care and attention to afflicted unfortunates, whereby unnecessary suffering, and perchance death, might ensue. The beneficent purpose of the statute would thus be nullified. The dreadful nature and possible consequences of the disease of small-pox, and the danger of contagion to the physician, his family, and other patients, are so apparent to all as to be matters of common knowledge, and it does not require the evidence of medical men to warrant the conclusion that the fee established by the resolution would, in such cases, be paltry and inadequate. The greater weight of the evidence tends to show the usual and customary fees in the city of Havana, for the services of a physician in small-pox cases, to have been the sum of ten dollars per visit to one patient, and one dollar extra for each additional patient in the family.

The resolution, in effect, prohibited the employment, by the overseer, of physicians at any rate of compensation than that named therein, thus rendering him, in many cases, powerless to act. Notwithstanding the resolution was void, in order to hold the appellee liable upon an implied contract it was essential to show that the overseer had notice of the necessity of the medical attention and assistance in question, and that he refused or neglected to act in the premises. While appellant testifies that he called the attention of the overseer to the cases in question, and that he replied that he would " look into the matter and let appellant know," the overseer expressly denies that he had any conversation whatever with appellant about the matter. The evidence upon the question being thus close and conflicting, the finding of the jury thereon

is conclusive. Appellant can, therefore, recover only by showing that either the overseer or the board, with full knowledge of the facts, subsequently recognized the liability of the county for the services rendered.

For the purpose of showing ratification, the appellant, on the trial, called one A. F. Terrell, who testified that he was county clerk of Mason county; that appellant filed a claim against the county for medical services amounting to $520. The remainder of his testimony and the rulings of the court, as shown by the abstract, were as follows:

"Q. What was done in regard to that?

Defendant objected to question. Objection sustained by court. Plaintiff at the time excepted.

Q. I will ask you whether the claim was allowed or refused?

A. The committee allowed $260 of that $520. The bill was approved by the Board of Supervisors.

The defendant asked the court to strike out the answer for the reason that the sole purpose of introducing it is to show the willingness of the county to pay part of the claim and therefore admit liability; also incompetent.

The Court: If they allowed a certain amount in the way of compromise, it is not competent as evidence.

Judge Lacey: All I want to know is whether they allowed the bill or not.

Plaintiff offered to produce the record of supervisors to show whether or not the bill was allowed. Defendant waived production of record.

The court sustained the objection and motion to strike out answer, 'The committee allowed $260,' etc. The plaintiff at the time excepted.

Q. What did they do in regard to allowing the bill?

A. They rejected it as a whole.

Defendant asked the court to strike out 'as a whole.' Motion overruled. Defendant excepted.

Later on, the plaintiff filed a bill for $1,280. The board took no action on that. The doctor never accepted anything they proposed.

Defendant objected to last answer as incompetent. The court sustained the objection, to which ruling the plaintiff excepted."

Counsel for appellee again insist, in this court, that the testimony offered was properly stricken from the record, for the

reason that its only purpose was to show that appellee had allowed part of the claim as a compromise; and for the further reason that the original claim of $520, part of which, it was claimed, was allowed, was subsequently withdrawn and a new one substituted. The evidence shows that the services for which compensation was charged in each claim were identical, the only difference being that in the second claim a larger sum per visit was charged, and a small item for services rendered since the presentation of the first claim added. There is nothing in the evidence quoted warranting the assumption that the allowance of the claim in part was in the nature of an offer to compromise the full claim. Had such partial allowance been shown to have been made unconditionally it would have operated as an admission of liability to that extent, regardless of whether or not the overseer had notice of the necessity of the services. The evidence in question was not subject to the objection interposed, and the court erred in excluding the same.

We are of opinion that the action of the court in excluding a portion of the cross-examination of the witness Duffy was not prejudicial error. The evidence excluded, if competent, was but a repetition of his evidence already given.

The views hereinbefore expressed dispose of all questions as to the propriety of the instructions given and refused by the court.

For the errors indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*